IN THE UNITED STATES DISTRICT COURT
NORTHISN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RAYMOND L. MOORE,<br><br>        Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | CASE NO. 3:22-CV-00446-JJH<br><br>DISTRICT JUDGE<br>Jeffrey J. Helmick<br><br>MAGISTRATE JUDGE<br>James E. Grimes Jr.<br><br>**REPORT & RECOMMENDATION** |

Plaintiff Raymond Moore filed a Complaint against the Commissioner of Social Security seeking judicial review of the decision to deny him Disability Insurance Benefits and Supplemental Security Income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). This matter has been referred to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend the District Court affirm the Commissioner's decision.

**Procedural History**[1]

In April 2019, Moore filed an application for Disability Insurance Benefits and Supplemental Security Income alleging a disability onset date of

---

[1] I've limited this discussion to the procedural events relevant to the arguments presented by the parties.

September 1, 2015.[2] Tr. 197. He claimed he was disabled due to lung issues. Tr. 237. The Commissioner also considered Moore's limitations with respect to his knee issues, depression, and anxiety. Tr. 145. Moore's applications were denied initially, Tr. 128–133, and upon reconsideration. Tr. 138–150. In January 2020, Moore requested a hearing before an administrative law judge (ALJ). Tr. 151–153.

In July 2020, ALJ Jennifer Smiley held a hearing at which Moore and a vocational expert testified. Tr. 30–58. In December 2020, ALJ Smiley issued a written decision finding that Moore was not disabled. Tr. 10–24. Moore appealed. Tr. 194–196. The ALJ's decision became final in January 2022 when the Appeals Council declined further review. Tr. 1–6, *see* 20 C.F.R. § 404.981.

Moore filed this action in March 2022. Doc. 1. In it, Moore alleges that ALJ Smiley erred in her evaluation of the severity of Moore's shoulder and clavicle issues and his resulting limitations. Doc. No. 12-1, at 5–6. Moore also challenges that the ALJ's finding that his cervical radiculopathy[3] is not a medically determinable impairment and claims that the ALJ's decision not to

---

[2] "Once a finding of disability is made, the ALJ must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

[3] Cervical means "pertaining to the neck." Dorland's Illustrated Medical Dictionary 333 (32nd ed. 2012). Radiculopathy is "disease of the nerve roots, such as from inflammation or impingement by a tumor or a bony spur." *Id.*, at 1571. Cervical radiculopathy is "radiculopathy of cervical nerve roots, often with neck or shoulder pain; compression of nerve roots is a common cause in this area." *Id.*

2

include consideration of cervical radiculopathy in his residual functional capacity (RFC) is reversible error.[4] Doc. 12-1, at 8–10.

## Factual History[5]

Moore was born in 1974 and was 40 years old on the alleged onset date. Tr. 197. He has a high school education.[6] Tr. 23, Doc. 13, at 2. He previously worked as machine operator, pipe bender, and foundry worker. Tr. 38–41, 238.

*Medical Evidence*

In January 2016, Moore fell from a 7-foot ladder onto his left shoulder and sought emergency medical treatment at Marion General Hospital. Tr. 330–335. Physician's assistant (PA) Drew Bordner conducted a physical examination of Moore's left arm which revealed "good pulses and sensation. No pain to hand, wrist, forearm, elbow," though Moore did have pain in his entire

---

[4] An RFC is an "assessment of" a claimant's ability to work, taking his or his "limitations … into account." *Howard c. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Circ. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it is the Social Security Agency's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

[5] Moore has cited multiple physical and mental health impairments throughout the pendency of his claim. Tr. 237, 38-41. The grounds on which he seeks remand in the instant appeal, however, and those to which the Commissioner responds, relate exclusively to the ALJ's evaluation, consideration, and analysis of Moore's shoulder and clavicle issues and attendant symptoms. I have limited the recitation of facts here accordingly.

[6] The record does not establish Moore's highest level of education; however, Moore does not contest the ALJ's or Respondent's assertion that he completed high school. Tr. 22; Doc. 13, at 2.

shoulder. Tr. 332. PA Bordner noted "some erythema"[7] over Moore's proximal humerus and pain with "any attempted [range of motion]." Tr. 332. PA Bordner also noted a chronic deformity over Moore's left clavicle but noted that Moore reported "no pain" over his clavicle bone. *Id*. PA Bordner diagnosed Moore with a dislocated left acromioclavicular (AC) joint and prescribed medication for the pain. Tr. 333. The radiology records confirmed that Moore had an "old, healed midshaft left clavicle fracture" and that his shoulder was unremarkable, with "no fracture, dislocation, or major degenerative changes." Tr. 332, 335.

During the third week of February 2016, Moore attended three physical therapy sessions at the Marion Medical Campus of Ohio Health. Tr. 384–392. Although Moore was advised to attend therapy three times a week for four weeks, the record reflects that he only adhered to this treatment plan for one week. Tr. 384–392. Physical therapist (PT) Valerie C. Campbell observed that Moore's left clavicle fracture from 2013 had healed with a deformity. Tr. 384, 387. Moore denied numbness or paresthesia[8] to PT Campbell. Tr. 384. During Moore's first and second appointments, PT Campbell listed his diagnoses as a separated AC joint, cervical nerve root disorder, and a closed dislocation of the

---

[7] Erythema is "redness of the skin produced by congestion of the capillaries." Dorland's Illustrated Medical Dictionary 643 (32nd ed. 2012).

[8] Paresthesia is an abnormal touch sensation such as burning, prickling, or formication, often in the absence of an external stimulus. Dorland's Illustrated Medical Dictionary 1383 (32nd ed. 2012).

4

clavicle. Tr. 384, 387. By Moore's third appointment, PT Campbell had removed Moore's separated AC joint from the list. Tr. 390.

*State agency opinions*

In June 2019, Gerald Klyop, M.D., a state agency medical consultant, conducted Moore's initial physical RFC assessment. Tr. 71–75. Dr. Klyop opined that Moore could occasionally lift or carry 10 pounds; stand, walk, or sit for a total of about 6 hours in an 8-hour workday; and should limit his lifting and carrying. Tr. 71–72. Dr. Klyop further opined that Moore could perform light work and could frequently climb ramps and stairs; never climb ladders, ropes, scaffolds, or crawl; and should avoid even moderate exposure to pulmonary irritants. Tr. 72–73.

In December 2019, Steve E. McKee, M.D., a state agency medical consultant, conducted Moore's physical RFC assessment at the reconsideration level. Tr. 90–107. Dr. McKee agreed with Dr. Klyop's opinions as to Moore's physical RFC. Tr. 100–103.

*Hearing testimony*

In July 2020, ALJ Smiley held a hearing at which Moore and vocational expert Glee Ann Kehr testified. Tr. 30–58. Moore was represented by counsel during the hearing. *Id*. In his opening statement, Moore asserted that he had the following severe impairments: chronic obstructive pulmonary disease (COPD), emphysema, arthritis, hypertension, a history of myocardial infarctions, a prior knee replacement, chronic pain syndrome, cervical

5

radiculopathy stemming from a shoulder and clavicle injury he sustained during the 2016 fall, major depressive disorder, post–traumatic stress disorder (PTSD), and the effects of exposure to beryllium. Tr. 37.

When asked about his left shoulder and cervical radiculopathy issues, Moore responded that he has arthritis in his left shoulder and in his "elbow on [his] left side." Tr. 50. The ALJ asked whether Moore had any difficulty reaching in front of his body or over his head, to which Moore responded, "Overhead, my arm—if I try to hold my arms above my head to do anything, they go numb real quick. I can't—just a few seconds and then, they're—I can't feel my fingers or nothing." Tr. 51. He also reported difficulty grasping objects, indicating that "sometimes" a cup of coffee "will just slide right out of [his] hand … like [he] let go of it, but [he] didn't." *Id*. He informed the ALJ that he is right-handed. *Id*.

The ALJ next heard from vocational expert Glee Ann Kehr. Tr. 52–57. The ALJ and Ms. Kehr discussed Moore's past work as a heat treater, bending machine operator, and molding machine operator. Tr. 53. The ALJ asked Ms. Kehr to determine whether a hypothetical individual with the same age, education and work experience as Moore could perform Moore's past work or any other work if that individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 53–54. Ms. Kehr answered that such an individual could not perform any of Moore's past work but could perform light, unskilled jobs available in the national economy such as office helper,

6

merchandise marker, or mailroom clerk. Tr. 54. If the exertion level were reduced from light to sedentary, Ms. Kehr testified, the hypothetical individual could perform jobs such as address clerk, document clerk, and accounts clerk. Tr. 54–55.

In December 2022, ALJ Smiley issued a written decision finding that Moore was not disabled. Tr. 10–24.

## The ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. Moore meets the insured status requirements of the Social Security Act through December 31, 2018.

2. Moore has not engaged in substantial gainful activity since September 1, 2015, the alleged onset date. 20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*

3. Moore has the following severe impairments: emphysema, lung disease, degenerative joint disease of the left knee, depression, and post–traumatic stress disorder (PTSD). 20 C.F.R. 404.1520(c) and 416.920(c).

4. Moore does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. 404.1520(d), 404.1525 and 404.1526, 416.920(d), 416.925 and 416.926).

5. Moore has the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(b) and 416.967(a) except he can frequently climb ramps and stairs; never climb ladders, ropes, and scaffolds; and never crawl. He should avoid moderate exposure to pulmonary irritants including dust, fumes, and odors, as well as to extreme heat or extreme cold. He can carry out simple instructions; make simple work–related decisions; and tolerate occasional changes in a routine work setting, occasional interactions with supervisors and co–workers and no interaction with the public.

7

6. Moore is unable to perform any past relevant work. 20 C.F.R. 404.1565 and 416.965.

7. Moore was born in 1974 and was 40 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date. 20 C.F.R. 404.1563 and 416.963.

8. Moore has at least a high school education. 20 C.F.R. 404.1564 and 416.964.

9. Transferability of job skills is not material to the determination of disability because using the Medical–Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. See SSR 82–41 and 20 CFR Part 404, Subpart P, Appendix 2.

10. Considering Moore's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. 20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a).

….

Based on the testimony of the vocational expert, … Moore is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

Tr. 10–24.

## Standard for Disability

Eligibility for benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

8

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

> 1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.
>
> 2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.
>
> 3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.
>
> 4. What is the claimant's residual functional capacity, and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.
>
> 5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the vocational factors to perform available work in the national economy. *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Id.*

## Standard of review

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the Commissioner has failed to apply the correct legal

9

standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989)). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)).

A court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "'zone of choice within which'" the Commissioner can act, without fear of court "'interference.'" *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

## Discussion

Moore raises two issues, both of which challenge the ALJ's development of the RFC. First, Moore argues that the ALJ did not properly evaluate his

shoulder and clavicle issues, which he claims the ALJ should have deemed a severe impairment. Doc. 12, at 5–6. Moore says that even if I find that his shoulder and clavicle issues were properly classified as a non-severe impairment, the manipulation and reaching limitations of his left arm deserved more weight in the RFC. *Id*. He argues that the ALJ's findings are not supported by substantial evidence and that, as a result, he is entitled to remand. Doc. 12, at 6–8.

Moore's second argument challenges the ALJ's analysis at step two, in which she found that his cervical radiculopathy is not a medically determinable impairment. Doc. 12, at 8–10. Moore claims that the ALJ erred in her evaluation of the condition, which should have been incorporated into the RFC. *Id*. Moore argues that the ALJ's decision not to consider it is reversible error. Doc. 12, at 8–10.

*Issue 1: Substantial evidence supports the ALJ's evaluation of Moore's shoulder and clavicle issues.*

Moore says that the ALJ's decision not to classify his shoulder impairment as severe is reversible error because it is not supported by substantial evidence. Doc. 12, at 5–6. Moore continues, "This RFC is not supported by the evidence of the record and does not adequately account for Mr. Moore's left upper extremity impairments and limitations." Doc. 12-1, at 6. Moore does not explain how the RFC is unsupported by the record and does not cite what is inadequate about the ALJ's analysis. Also, Moore is incorrect. The ALJ cited the record throughout the decision, in support of her rulings,

11

including but not limited to her analysis of Moore's shoulder and clavicle issues, which were adequately discussed. Tr. 9, 10, 16, 17, 18, 19, 20.

The substantial evidence standard, which Moore does not address in his argument, is met when "a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec*, 375 Fed.3d. 387, 390 (6th Cir. 2004). The ALJ's evaluation of Moore's left arm limitations and the decision not to restrict his capacity for manipulation or reaching in the RFC, are grounded in the record and supported by substantial evidence.

The decision first sets forth the ALJ's findings with respect to Moore's severe impairments. Tr. 15. Next, she discusses her findings with respect to those impairments Moore has which she considered non-severe, including his shoulder and clavicle issues:

> The record also establishes the presence of non–severe impairments including: [an] old healed midshaft left clavicular fracture, gastroesophageal reflux disease (GERD), obstructive sleep apnea, and hypertension.
>
> The record demonstrates that he dislocated his shoulder in January 2016 after falling off of a ladder. He visited the emergency room where he reported that he had previously broken his collarbone but never had it repaired. He reported left shoulder pain, but he denied weakness or numbness. His physical examination revealed he had some erythema over the proximal humerus and chronic deformity over the clavicle, but he had good pulses and sensation with no cranial nerve deficit and no pain in his hand, wrist, forearm and elbow. X–rays showed an old healed midshaft left clavicular fracture with no fracture, dislocation, or major degenerative changes. He was discharged with medication and participated in a short period of physical therapy in 2016, but has had no further treatment. Subsequent physical examinations have documented normal range of motion, muscle tone, and

> coordination with no focal findings or cranial deficits. His left elbow, wrist, hand, and fingers were supple and stable without deformity and tenderness. (B1F–B4F, B9F & B11F).

Tr. 15–16, citing Tr. 285–566, 685–736, 831–858.

The ALJ then referenced Moore's medical record evidence, including his 2016 dislocated left shoulder diagnosis, before explaining how she, nonetheless, determined that limitations on Moore's manipulation and reaching were unwarranted in the RFC:

> Overall, the claimant's subjective allegations are partially consistent with the overall record…While the claimant reported left shoulder issues, imaging from 2016 showed an old healed fracture in his left arm but no degenerative changes, and after brief treatment with physical therapy he had no further treatment or complaints of left shoulder pain or numbness. Subsequent examinations revealed normal range of motion, muscle tone, and coordination. He had no focal findings or no cranial deficits, and his left elbow, wrist, hand and fingers were supple and stable without deformity and tenderness. Thus, manipulative and reaching limitations are not warranted.

Tr. 22.

The ALJ demonstrated her consideration of Moore's shoulder and clavicle issues beyond just what was contained in the written record, noting that during the hearing, Moore "reported a history of a broken left arm and collarbone, along with arthritis in his left shoulder that causes numbness with reaching overhead and numbness in his fingers." Tr. 18. The ALJ acknowledged Moore's grip issues. ("The claimant stated that sometimes he drops his coffee." *Id.*). So the ALJ considered the full breadth of Moore's

13

shoulder and clavicle complaints and decided they were some of Moore's several non-severe impairments.

The ALJ laid out the proper approach to classifying the severity of an impairment, explaining that she considered impairment non-severe if, despite being medically determinable, the evidence did not establish that the impairment had caused a work-related limitation. Tr. 16; *see Higgs v. Bowen*, 880 F.2d 860, 863 (6th Circ. 1988) ("The mere diagnosis of [a condition] … says nothing about the severity of the condition."). As excerpted above, the ALJ cited the record to explain her finding that Moore's shoulder and clavicle impairment is non-severe. Tr. 15–16 (citing Tr. 285–566, 685–736, 831–858); Tr. 22. Her discussion demonstrates that substantial evidence supports this finding. Tr. 22.

Also, the ALJ's classification of Moore's shoulder and clavicle issues as a severe or non-severe impairment is of very little consequence. At step two of her analysis, the ALJ found that Moore had multiple severe impairments— "emphysema, lung disease, degenerative joint disease of the left knee, depression, and PTSD," Tr. 15—and, as required, noted that she had "considered all of the claimant's impairments when assessing limitations in his residual functional capacity." Tr. 16; *see Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ

14

characterized any other alleged impairment as severe or not severe is of little consequence.").

Moore says that the ALJ, "after determining that the impairment was "non-severe," simply disregarded the associated limitations documented consistently throughout the record and with Mr. Moore's testimony." Doc. 12-1, at 7. That's incorrect. As provided above, the ALJ documented her extensive consideration of Moore's shoulder and clavicle issues, citing not only the evidence contained in the medical records, *e.g.*, Tr. 16, 17, but also including Moore's subjective symptoms as established during the hearing. Tr. 18, 19.

The ALJ decided not to limit Moore's residual capacity for manipulation or reaching following a methodical review of the evidence. Tr. 22. The ALJ cited documentation in the medical records that undermined Moore's subjective claims, noting that Moore did not have any degenerative changes in his shoulder and was found to be normal in objective tests for range of motion, muscle tone, and coordination. Tr. 22. And when the ALJ declined to limit Moore's capacity to manipulate or reach in the RFC, she cited substantial support in the record for her decision, illustrating how she met the substantial evidence standard. Moore does not address the standard or explain how the ALJ's evaluation failed to meet it. As such, Moore's argument fails.

*Issue 2: Substantial evidence supports the ALJ's finding that Moore's cervical radiculopathy was not a medically determinable impairment.*

Moore says, "The evidence of the record clearly supports a finding that Mr. Moore's cervical radiculopathy is a medically determinable impairment."

Doc 12-1 at 9. Maybe so but Moore's observation ignores the standard of review. "[E]ven if substantial evidence also would … support [] a finding other than the one the ALJ made," a court must nonetheless affirm if substantial evidence supports the Commissioner's decision. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Jones*, 336 F.3d at 477. And Moore doesn't tackle the question of whether the ALJ's decision is also supported by substantial evidence. So his arguments fail.

Even if Moore had addressed the right question, he would not prevail. The ALJ's decision regarding Moore's cervical radiculopathy is supported by substantial evidence within the record, and Moore has not illustrated how it failed to meet that standard. Also, Moore has not pointed to sufficient evidence in the record to show that cervical radiculopathy caused him any work-related functional impairment or would have supported him to establish disability.

Moore says cervical radiculopathy "has more than a 'minimal effect' on his ability to perform basic work activities" and claims that his condition and its resulting limitations "including pain, numbness, and difficulty with grasping" are "consistently document[ed]." Doc. 12-1, at 9. Moore's claim is belied by the record. Moore established a two-month period in early 2016 during which he was diagnosed with cervical radiculopathy along with his shoulder and clavicle issues and received treatment and physical therapy for those conditions collectively. Tr. 330–335, 384–392. The record does not

16

establish that Moore has ongoing limitations independently attributable to cervical radiculopathy.

Further, Moore's citations to the record, submitted to support his claim that the record required the ALJ to find his cervical radiculopathy a medically determinable impairment, Doc. 12-1, at 9, are unpersuasive. Putting aside the fact that whether the record supports his argument is beside the point, *see Smith*, 99 F.3d at 782, Moore cites his testimony at page 50 of the record, treatment notes from his visit to a pulmonologist in June 2016, and notes from his three physical therapy sessions in February 2016. Doc. 12-1, at 9. But this evidence doesn't establish that his condition caused any limitation on his ability to work, or that if the condition caused any limitation, that limitation lasted at least 12 months.

The most relevant of these is Moore's citation to the notes from the three physical therapy sessions he attended for cervical radiculopathy during one week in February 2016. *Id*. at 9 (citing Tr. 384, 387, 390). It is worth noting that Moore was originally scheduled to return to physical therapy three times each week for four weeks, for a total of twelve sessions. Tr. 384. Moore only attended for the first week. Tr. 384–392. And Moore doesn't explain how these documents, from one week in February 2016, show that his ability to work was limited in any way or that any limitation lasted over 12 months.

Moore also directs the Court to a portion of the hearing during which he testified about pain, numbness, and difficulty gripping objects in response to

17

the ALJ's question about his cervical radiculopathy. Tr. 50–51; Doc. 12-1, at 9 (citing Tr. 50). The ALJ accounted for this testimony during her discussion of Moore's subjective symptoms—"He … reported a history of a broken left arm and collarbone, along with arthritis in his left shoulder that causes numbness with reaching overhead and numbness in his fingers. The claimant stated that sometimes he drops his coffee." Tr. 18—and Moore doesn't say why this account is not supported by substantial evidence.

Moore's final citation is merely a listing of the condition which appeared in the patient summary section of a set of medical records related to a *pulmonology* office visit Moore had several months after failing to complete physical therapy. Doc. 12-1, at 9 (citing Tr. 293). The summary merely notes that cervical radiculopathy was "noted on 2/18/2016." Tr. 293. So this portion of the record does not provide additional support for Moore's argument.

These references do not support Moore's claims. Beyond Moore's failure to comply with what was already a short-term treatment plan in February 2016, he does not provide documentation of treatment he received for cervical radiculopathy or any complaint of a work-related functional limitation it, specifically, caused. The limitations that Moore claims are caused by his cervical radiculopathy were addressed collectively when the ALJ addressed his shoulder and clavicle issues in the decision. Tr. 22

But even if the ALJ had overlooked this and included cervical radiculopathy in the list of Moore's medically determinable impairments, the

18

"mere existence of [an] impairment[] … does not establish that [a claimant is] significantly limited from performing basic work activities for a continuous period of time," as required to establish that a claimant suffers from a disability. *Despins v. Comm'r of Soc. Sec.,* 257 F. App'x 923, 030 (6th Cir, 2007) (citing *Higgs*, 880 F. 2d at 863 and *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988)); *see* 42 U.S.C. § 423(d)(1)(A) (requiring a claimant to show that a medically determinable impairment "has lasted or can be *expected to last for a continuous period of not less than twelve months,*" and "render him unable to engage in any substantial gainful activity *for at least a consecutive twelve–month period*") (emphasis added). And it is the claimant's responsibility to provide the Commissioner with medical and other evidence supporting conclusions about the claimed medical impairment and its effect on the claimant's ability to work on a sustained basis. 20 C.F.R. §§ 404.1512, 416.912.

Here, Moore points to no medical or other evidence sufficient to support his claim that his cervical radiculopathy had "more than a minimal effect" on Moore's ability to perform basic work activities, much less that the ALJ's decision is not supported by the record. Doc. 12-1, at 6. He cites to the chronic deformity of his clavicle bone but does not explain how that is related to cervical radiculopathy or impedes his ability to work. So Moore hasn't shown that he carried his burden below.

## Conclusion

For the reasons explained above, I recommend that the Commissioner's decision be affirmed.

Dated: December 28, 2022

*/s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019).